# Exhibit 1:

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the fore-
going document was served on the attorney
of record for each party named in this action,
by mail, postage prepaid on 10/20/2015

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF MASSACHUSETTS

ANDREW CARINI,
     **Plaintiff**

V.

SANDLER FISHERIES, INC.
     **Defendant**

)
)
)
)
)
)
)
)
)
)

**Civil Action No.: 14-cv-13298-LTS**

## PLAINTIFF'S DISCLOSURE OF EXPERT WITNESSES AND TESTIMONY OF TREATING PHYSICIAN PURSUANT TO FED.R.CIV.P. 26 (A)(2)(C) AND THE COURT'S ORDER

Now comes the Plaintiff in the above-captioned matter and, pursuant to Fed.R.Civ.P 26

(a) (2) (C), and the Court's Order at the Status Conference held on October 7, 2015, identifies the

below listed witnesses as individuals through whom he may offer expert testimony at the time of

trial.

1. **Michael Medlock, M.D.**
   **Treating Neurosurgeon**
   **Assistant Visiting Professor of Neurosurgery, Harvard Medical School**
   **Salem North Shore Medical Center—Neurosurgery & Spine**
   **4 Centennial Drive**
   **Peabody, MA 01960**

Dr. Medlock is a board certified neurosurgeon and he treated the Plaintiff for his lumbar

spine injuries. Dr. Medlock is expected to testify as to the Plaintiff's complete medical treatment

for the injury he experienced in January/February 2012 aboard the Defendant's vessel, including

the Plaintiff's injury, all of the Plaintiff's diagnoses, prognoses, and all treatment, examinations,

testing, imaging and surgeries the Plaintiff underwent. Dr. Medlock is further expected to testify

as to the permanency of the Plaintiff's injuries and conditions, the Plaintiff's current and future

physical restrictions, and the Plaintiff's need for future medical treatment. Dr. Medlock is expected to opine that the Plaintiff's injury, treatment, and permanent pain and physical restrictions are causally related to the injury the Plaintiff suffered on the Defendant's vessel in January/February of 2012.

Dr. Medlock first treated the Plaintiff on February 11, 2014, after the Plaintiff was referred to him by Dr. Shawn Pawson. Dr. Medlock will explain that the Plaintiff presented for evaluation of right leg pain that began approximately 2 years prior after a workplace injury. He will further explain that prior to this initial visit the Plaintiff treated for his lower back pain and injuries with multiple providers during those 2 years, including Addison Gilbert Hospital, Beverly Hospital, as well as Drs. Zaven Jouhourian, Kaipo Pau, Jeremy Shore, and Shawn Pawson, and their respective treatment facilities. Dr. Medlock will testify as to the histories obtained by these doctors and facilities and all imaging, testing, examinations, evaluations, diagnoses, recommendations and treatment provided by each, as set forth in their respective medical records, which have been provided to the Defendant

Dr. Medlock will testify that when he first treated the Plaintiff on February 11, 2014, the Plaintiff's MRI imaging revealed, and the Plaintiff had been diagnosed with, a moderate to large right side disk herniation at the L5-S1 level, with encroachment upon the right S1 nerve root posteriorly. He will explain in detail all aspects of the Plaintiff's disk herniation and the MRI images documenting it. He will opine that the Plaintiff's disk herniation was directly and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. He will base this opinion on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's

2

medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff's fell in the fish hold of the Defendant's vessel in January/February 2012, when his foot slipped through pen boards placed unsecured on the floor of the fish hold and he fell to the floor hitting his lower back.

Dr. Medlock will further testify that as a result of the Plaintiff's injury, and the failure of the conservative measures administered by the Plaintiff's prior medical providers, he recommended, and eventually performed on March 17, 2014, a right sided L5-S1 microdiskectomy on the Plaintiff. Dr. Medlock will testify in detail about this surgery, including a complete description of the procedures, equipment and methods used consistent with what appears in the Plaintiff's medical records and operative notes. He will opine that the right sided L5-S1 microdiskectomy that he performed on the Plaintiff was reasonable, necessary and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. He will base this opinion on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff's fell in the fish hold of the Defendant's vessel in January/February 2012 when his foot slipped through pen boards placed unsecured on the floor of the fish hold and he fell to the floor hitting his lower back.

Dr. Medlock will then testify that he continued to treat the Plaintiff in follow-up after the above surgery. He will explain that he referred the Plaintiff to physical therapy for an extended period of time. Dr. Medlock will describe the physical therapy in detail and explain the goals and the Plaintiff's progress towards meeting those goals. He will opine that the follow-up care

3

that he provided, including but not limited to the physical therapy regime that he prescribed and that was undertaken by the Plaintiff, was reasonable, necessary and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. This opinion is based on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff's fell in the fish hold of the Defendant's vessel sometime in January/February 2012 when his foot slipped through the unsecured pen boards placed on the floor of the fish hold and he fell to the floor hitting his lower back.

Dr. Medlock will then testify that during his postoperative treatment of the Plaintiff the Plaintiff continued to report pain and discomfort in his lower back. Dr. Medlock will explain that he referred the Plaintiff for a follow-up MRI, which was performed on September 8, 2014, and which revealed a large recurrent right sided herniation at L5-S1. Dr. Medlock will testify as to all aspects of the recurrent disk herniation and its causes and effects. He will opine that the Plaintiff's recurrent disk herniation was directly and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. His opinion is based on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff's fell in the fish hold of the Defendant's vessel sometime in January/February 2012 when his foot slipped through the unsecured pen boards placed on the floor of the fish hold and he fell to the floor hitting his lower back.

4

Dr. Medlock will further testify that as a result of the Plaintiff's recurrent herniation, and the failure of the physical therapy to relieve his symptoms, he recommended, and eventually performed on March 25, 2015, a right sided L5-S1 repeat microdiskectomy on the Plaintiff. Dr. Medlock will testify in detail about this surgery, including a complete description of the procedures, equipment and methods used consistent with what appears in the Plaintiff's medical records and operative notes. He will opine that the repeat microdiskectomy that he performed on the Plaintiff was reasonable, necessary and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. He will base this opinion on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff's fell in the fish hold of the Defendant's vessel in January/February 2012 when his foot slipped through pen boards placed unsecured on the floor of the fish hold and he fell to the floor hitting his lower back.

Dr. Medlock will then testify that he continued to treat the Plaintiff in follow-up after the above repeat microdiskectomy surgery. He will explain that he referred the Plaintiff to physical therapy for an extended period of time. Dr. Medlock will describe the physical therapy in detail and explain the goals and the Plaintiff's progress towards meeting those goals. He will opine that the follow-up care that he provided, including but not limited to the physical therapy regime that he prescribed and that was undertaken by the Plaintiff, was reasonable, necessary and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. This opinion is based on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's

5

medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff fell in the fish hold of the Defendant's vessel sometime in January/February 2012 when his foot slipped through the unsecured pen boards placed on the floor of the fish hold and he fell to the floor hitting his lower back.

Dr. Medlock will then testify that during the Plaintiff's convalescence and his postoperative care and treatment of the Plaintiff, the Plaintiff continued to report pain and discomfort in his lower back. Dr. Medlock will opine that the Plaintiff is at a medical endpoint and that the symptoms he suffers now, including but not limited to pain and numbness, will never resolve. Dr. Medlock will further opine that the Plaintiff suffers from permanent physical restrictions which render him permanently disabled from any and all occupations involving heavy lifting and/or labor, including but not limited to commercial fishing on draggers. He will opine that the Plaintiff's unresolved lumbar pain and current physical restrictions are permanent and causally related to the fall the Plaintiff sustained in January/February 2012, aboard the Defendant's vessel. His opinion is based on his treatment and examination of the Plaintiff as well as his education, training and experience, and (1) the facts contained in the Plaintiff's medical records and imaging, and (2) the facts testified to by the Plaintiff in this matter, specifically, that the Plaintiff's fell in the fish hold of the Defendant's vessel sometime in January/February 2012 when his foot slipped through the unsecured pen boards placed on the floor of the fish hold and he fell to the floor hitting his lower back, and that the Plaintiff continues to experience pain and numbness in his back and lower extremities.

Curriculum Vitae will be provided.

6

**PLAINTIFF RESERVES THE RIGHT TO SUPPLEMENT ALL EXPERT REPORTS UPON THE COMPLETION OF THE DEPOSITIONS IN THIS MATTER**

Date: 10/20/2015

Respectfully submitted for the Plaintiff, ANDREW CARINI, by his attorneys

Jonathan E. Gilzean, Esq.
Latti & Anderson, LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000
JGilzean@lattianderson.com